**IN THE COURT OF APPEALS OF IOWA**

No. 20-0523
Filed June 16, 2021


**MARTIN E. CASTELLANOS,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____


     Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.


     Martin Castellanos appeals the dismissal of his applications for

postconviction relief.  **AFFIRMED.**



     Jeremy L. Merrill of Lubinus & Merrill, P.L.C., Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.



     Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

Martin Castellanos appeals the dismissal of his applications for postconviction relief. Because Castellanos did not establish a fact issue concerning his mental competency at the time of the plea hearing, we affirm.

## I. Background Facts & Proceedings

On November 8, 2013, Castellanos was charged with first-degree murder. On September 4, 2014, as part of a plea agreement, Castellanos entered a plea of guilty to attempted murder and willful injury causing serious injury while armed with a dangerous weapon.

On July 21 and July 31, 2017, Castellanos filed applications for postconviction relief (PCR), claiming his pleas were not voluntary because of undue influence. The applications were consolidated.[1]

At the request of Castellanos's counsel, the court ordered a mental-health evaluation by Dr. Angela Stokes. Dr. Stokes's review noted Castellanos was placed on antipsychotic medications and started therapy while in jail in February 2014. By the end of June, he refused to take his medications, and in August, he said he no longer needed to see a therapist. Dr. Stokes diagnosed Castellanos with schizophrenia, schizoaffective disorder, delusional disorder, and bipolar disorder. As to his competency at the time of his guilty plea, she stated,

> [I]t is unknown whether he had these delusions at the time he was facing trial for the charges that he was later convicted of. However, given his mental state at this time, and given that he was on

---

[1] Castellanos filed a pro se motion to withdraw his PCR applications in December 2017. His counsel sought a guardian ad litem because "the undersigned's duty to obey his client and his duty to protect his client's best interests collide." In January 2018, the court denied the motion, and in February Castellanos decided to proceed with his PCR.

medication that would be used to treat a severe mental health condition involving psychosis, this examiner opines that Mr. Castellanos should have been examined for competency to continue proceedings that led to his conviction.

In March 2018, the State filed a motion for summary judgment, asserting the record showed Castellanos was mentally competent when he entered his guilty pleas and his lack of defense meant he was not prejudiced by pleading guilty to lesser charges. The court denied the motion, finding "there is a genuine issue as to [Castellanos's] mental state and competency at the time he entered a plea of guilty on the underlying felony matter and as such there is a genuine issue of fact in dispute here for which summary judgment is not appropriate."

After summary judgment was denied, the State sought its own psychiatric report from Dr. Arnold Anderson. Dr. Anderson spoke with Castellanos's 2014 counsel, who said, "If I thought there was a problem, I would have done something. I would have had him checked out by a forensic psychologist." Dr. Anderson noted the "antipsychotic medications" can also be prescribed for "non-psychotic depressive illness or severe anxiety" and Castellanos stopped taking his medications after expressing concerns about their side effects. Dr. Anderson also noted the September 15, 2014 psychiatric summary from Castellanos's intake by the Iowa Medical and Classification Center—less than two weeks after his guilty plea—only diagnosed Castellanos with adjustment disorder with depressed mood—"[h]allucinations and delusions were absent." Three years later, in September 2017, the evaluating psychiatrist at the Iowa Medical and Classification Center found Castellanos had developed a delusional disorder. Dr. Anderson opined the evidence did not show at the time of the plea hearing Castellanos would

have been suffering from a serious mental illness rendering him unable to meaningfully consent to his plea deal or plead guilty.

The State moved for summary judgment again. The court considered the transcript from the plea hearing, Dr. Stokes's report, and Dr. Anderson's report. The court found Dr. Stokes's report was pertinent to Castellanos's current state and Dr. Anderson's report examined his mental state at the time of the plea hearing. Based on this information, the court granted the State's motion for summary judgment and dismissed Castellanos's applications for PCR.

Castellanos appeals, asserting the evidence presented created a disputed issue of material fact.

## II. Standard of Review

"We ordinarily review summary dispositions of PCR applications for correction of errors at law." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019). "We apply our summary judgment standards to summary disposition of [PCR] applications." *Id.* at 730 (citation omitted). "In ruling on a motion for summary judgment, the court does not weigh the evidence. Instead, the court inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party." *Id.* (citations omitted). "The burden of showing undisputed facts entitling the moving party to summary judgment rests with the moving party." *Id.*

## III. Analysis

A defendant may not be subjected to a criminal proceedings if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his

defense." *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994). However, the law presumes a defendant to be competent; the burden is on the defendant to prove otherwise. *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991). "[I]f the evidence is in equipoise, the presumption of competency prevails. Our task on . . . review is to examine the totality of the circumstances to determine if, at the relevant time, a substantial question of the applicant's competency reasonably appeared." *Id.* In our evaluation, we consider those competency factors known to the court at the time of the guilty plea hearing. *See State v. Walton*, 228 N.W.2d 21, 24 (Iowa 1975) ("Our task here, then, is to examine all the circumstances before trial court to determine if at the time his plea was accepted there existed an unresolved reasonable doubt as to defendant's competence to plead guilty.").

The critical questions a court considers in determining whether a defendant is competent to stand trial is whether the defendant has the ability—at the time in question—to "(1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense." *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993) (listing irrational behavior, demeanor, and prior medical diagnoses as important factors to consider). The opinion of defense counsel on a defendant's competency plays an important role. *State v. Einfeldt*, 914 N.W.2d 773, 780 (Iowa 2018).

Nothing in the record—specifically the plea-hearing transcript—suggests the judge who accepted the guilty plea had any reason to question Castellanos's competence. Castellanos points to a pro se motion he filed in the underlying criminal case dated June 8, 2014, in which he requested a mental-health expert and the appointment of a forensic pathologist. Yet, the motion fails to explain the

requests beyond that the experts would help in the preparation of his defense; the motion makes no mention or indication of a lack of competence.

According to Dr. Stokes's timeline, when Catellanos made the request for a mental-health expert he was seeing a therapist and taking his prescribed medications. It was later he refused his medications and stopped seeing his therapist. Importantly, the court did not have access to these medical records and had no reason to know Castellanos had ceased his treatment.

Castellanos's attorney told Dr. Anderson he did not think there was a problem with Castellanos's competency and "would have had him checked out by a forensic psychologist" if he had. Dr. Anderson cited Castellanos's prison intake diagnosis and noted an absence of hallucinations, delusions, and suicidal or homicidal thoughts. This information also was not before the court at the time of the plea hearing but illustrates how Castellanos presented to others.

The plea hearing itself provided the court its best chance to observe Castellanos. Nothing in the transcript from the hearing raises doubts as to Castellanos's ability to appreciate the charges against him, understand the proceedings, or assist effectively in his defense. *See Edwards*, 507 N.W.2d at 395. When the court asked if Castellanos had been told he had "any kind of a mental health issue or a medical problem that would in any way make it hard to understand what we're doing here today," Castellanos answered "No, not that I'm aware of. No." Castellanos answered questions from his counsel and the court clearly and without difficulty. He asked the court to clarify one question and provided additional information that was not in the minutes about the weapon used in the offenses.

We agree with the district court the record does not indicate Castellanos was suffering from a mental impairment at the time of the plea hearing that affected his ability to enter a knowing, intelligent, and voluntary plea. Considering the information available to the trial court at the time of the plea hearing, Castellanos did not establish a fact question as to whether he was competent at the time of his plea. We affirm.

**AFFIRMED.**